```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF TEXAS
            DALLAS DIVISION

UNITED STATES OF AMERICA,     §
                              §
              Plaintiff,      §
                              §   Criminal No. 3:08-CR-267-D
VS.                           §
                              §
FREDERICK R. KAY (18),        §
                              §
              Defendant.      §
```

MEMORANDUM OPINION
AND ORDER

Plaintiff United States of America (the "government") moves to revoke the magistrate judge's order setting conditions for the release of defendant Frederick R. Kay ("Kay"). The court has reviewed *de novo* the evidence presented at the hearing, including the tape of the detention hearing,[1] and it finds by clear and convincing evidence[2] that no condition or combination of conditions will reasonably assure the safety of any other person and the

---

[1] "When the district court, pursuant to 18 U.S.C. § 3142(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna,* 769 F. 2d 243, 249 (5th Cir. 1985). The court's review of the record developed before the magistrate judge is an appropriate procedure to comply with that obligation. *See, e.g., United States v. Farguson*, 721 F. Supp. 128, 129 n.1 (N.D. Tex. 1989) (Fitzwater, J.).

[2] The court applies a clear and convincing evidence standard in determining that no condition or combination of conditions will reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(f)(2)("The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.")

community if Kay is released on bond.³ Accordingly, pursuant to 18 U.S.C. § 3142(e), the court orders that Kay be detained pending trial.

I

Kay is charged by indictment with one count of conspiracy to possess with intent to distribute and distribute more than five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956.⁴ Following Kay's arrest, the government moved to detain him, both as a flight risk and as a danger to the community.

At the detention hearing, a special agent of the U.S. Drug Enforcement Administration ("DEA") testified that, during the course of a long-term investigation, which included court-authorized wire intercepts of the Hector Rodriguez ("Rodriguez") drug trafficking organization, DEA agents witnessed a narcotics transaction on August 26, 2008 between Kay and one of Rodriguez's couriers. Specifically, on August 26 agents observed one of

---

³Because the court is ordering Kay detained on this basis, it need not decide whether he is a flight risk. *See Fortna*, 769 F. 2d at 249 ("[T]he lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community is sufficient [to detain a defendant without bond]; both are not required.").

⁴The indictment also contains a criminal forfeiture allegation.

Rodriguez's couriers arrive at, and depart from, the stash location. Based on intercepted telephone calls and prior surveillance of narcotics deals, agents believed the courier was headed to Hamm's Tire Shop to meet with, and distribute illegal narcotics to, other individuals. At the tire shop, DEA surveillance observed Rodriguez's courier meet Kay and transfer four cardboard boxes to Kay, who then placed the boxes into an automobile. Dallas Police Department officers stopped the automobile a short time later, discovering approximately 100 kilograms of a substance that field-tested positive as cocaine.[5] Based on the investigation, one kilogram of cocaine sold for approximately $20,000. Therefore, the amount of drugs seized from Kay had a street value of approximately $2 million.

Kay's brother, Lonnie Ferguson ("Ferguson"), testified that Kay was born in Dallas and has lived in Dallas all his life, that many of his family members still live in the area, and that Kay is not a flight risk. Ferguson stated that Kay, who is unemployed, supports himself by doing "various jobs," including lawn care, construction work, and moving work.[6] He agreed to be a third-party custodian and to assist Kay in making court appearances. Ferguson

---

[5] The substance is currently at the DEA laboratory for a complete analysis.

[6] The court does not find credible Ferguson's testimony that Kay supports himself through "various jobs," such as lawn, construction, or moving work.

also testified that he had been convicted of possession of a controlled substance offense (cocaine), and had been released from parole in 2006.

During the hearing, the magistrate judge took judicial notice of Kay's Pretrial Services Report, which showed a criminal history extending from 1980 to 1996, and included a five-year Texas state sentence in 1990 for possession of a controlled substance (cocaine) and a parole revocation in 1992.

Following the hearing, the magistrate judge ordered Kay released on the conditions, *inter alia*, that he remain in Ferguson's custody and participate in the home confinement program, with electronic monitoring. The magistrate judge concluded that these conditions are sufficient to assure Kay's appearance as required and the safety of the community, given Kay's close family and community ties to Dallas and his lack of problems with the law for 12 years—from 1996 until now.

The court stayed Kay's release on September 29, 2008 so that the government could seek review of the order, and the government now moves for review and revocation of the order.

II

A

An individual shall be released pending trial unless a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Kay is charged with a violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* Specifically, he is charged with conspiracy under 21 U.S.C. § 846, punishable under 21 U.S.C. § 841(b)(1)(A) by imprisonment for a period that "may not be less than 10 years." Under the Bail Reform Act, the existence of probable cause——here, the grand jury indictment——to believe that Kay committed this offense creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(e). "The presumption shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion." *United States v. Hare*, 873 F. 2d 796, 798 (5th Cir. 1989). The mere production of evidence, however, does not completely rebut the presumption. In making its ultimate determination, "the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society." *Id.* at 798-99.

B

Because an indictment provides probable cause that a defendant committed an offense, *see United States v. Trosper*, 809 F. 2d 1107, 1110 (5th Cir. 1987), Kay's indictment for violating 21 U.S.C. § 846 (punishable under 21 U.S.C. § 841(b)(1)(A)) is sufficient to trigger the statutory presumption that no condition or combination

of conditions will reasonably assure the safety of any other person and the community. *See id.* (holding that presumption was properly applied to defendant upon proof that he had been indicted under 21 U.S.C. § 846).

C

The court finds that Kay has produced sufficient evidence to rebut the presumption of danger to the community. *See Trosper*, 809 F.2d at 1110 ("[T]he burden imposed on the defendant is the production of evidence supportive of the point for which it is offered"). Through his cross-examination of the DEA agent, Kay produced evidence that supports the inference that he would not continue to engage in drug trafficking if released on bail.[7] This testimony establishes that the boxes Kay picked up from Rodriguez's courier on August 26 were cardboard U-haul boxes, that the agents did not observe any money changing hands between Kay and the courier, and that even though an arrest would have been authorized under Texas law if the agents had witnessed a felony, no arrest was

---

[7] In addition to testifying that he had known Kay all his life and that he was shocked to learn of his possession of 100 kilograms of cocaine, Ferguson testified that he did not believe Kay would pose a danger to the community. This evidence, however, is not probative of the absence of dangerousness and is not sufficient to rebut the presumption. *See United States v. Kay*, 82 F. 3d 415, 1996 WL 167512, at *2 n.6 (5th Cir. 1996) (unpublished table decision) ("The proffered conclusory statements to be made by life-long acquaintances of the [defendants] (who are unaware of their drug trafficking) that the [defendants] are no danger to the community are not probative of the [defendants'] dangerousness.")

made when Kay retrieved the boxes. This testimony also establishes that, except for the August 26 exchange, the agents had never witnessed Kay in the presence of any of the alleged conspirators and that the agents had never intercepted a communication in which Kay agreed to transfer drugs or accepted money to transfer drugs. As such, this evidence undermines Kay's alleged intentional involvement with the Rodriguez drug trafficking organization, and therefore supports the premise that he will not continue to engage in drug trafficking, if released.

D

Although Kay has adduced evidence sufficient to overcome the presumption, the court finds from clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. "The risk of continued narcotics trafficking on bail constitutes a risk to the community." *Hare*, 873 F.2d at 798. Despite the fact that Kay rebutted the presumption of danger to the community, the presumption still carries evidentiary weight. *Id.* at 798-99. The government has also produced clear and convincing evidence that there is a risk of continued narcotics trafficking if Kay is released on bail. On August 26 Kay was found with 100 kilograms of cocaine with an approximate street value of $2 million. This evidence strongly indicates that Kay was a trusted member of the conspiracy. Moreover, there is reason to believe that Kay's

connection to the drug conspiracy is not just limited to the August 26 incident.  The government has shown that, on two separate occasions, DEA agents intercepted conversations between Rodriguez and a courier discussing a drug transaction involving "black guys in the white [Chevy Trailblazer]," and then later observed meetings between a courier and a black man matching this description. Although the government cannot positively say that the black man agents observed meeting with the drug courier on these two occasions is Kay, the agents did follow the white Trailblazer to the address listed on Kay's driver license.  Therefore, even if the man the agents observed was not Kay, it is clear that conspiracy "connections [are] still . . . readily available to him," *see United States v. Jefferson*, 40 F.3d 385, 1994 WL 652531, at *2 (5th Cir. 1994) (per curiam) (unpublished table decision), and Kay's unemployed status makes it much more likely that he will return to those connections, if released.  Finally, the seriousness of the offense and Kay's criminal history, which includes a conviction for possession of a controlled substance, a conviction for unlawfully carrying a weapon, and revocation of parole, militate against release.

After considering all the factors set forth in § 3142(g), the court finds clear and convincing evidence that Kay is likely to be a danger to any other person and the community unless detained pending trial.

III

Accordingly, the government's September 30, 2008 motion for review and revocation of release order is granted, and the magistrate judge's September 29, 2008 order setting conditions for Kay's release is revoked. The court orders that Kay be held without bond pending the trial of this action as follows. He is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. He is to be afforded reasonable opportunity for private consultation with his counsel. By order of this court, to be issued in the future, the person in charge of the corrections facility in which Kay is confined is to deliver him to a United States Marshal for the purpose of appearing in connection with any court proceeding.

**SO ORDERED.**

October 1, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE